State *ex rel.* R. R. Com'rs. v. A. C. L. R. R. Co.—Syllabus.

THE STATE OF FLORIDA *ex rel.,* THE RAILROAD COMMISSION-ERS, *Relators,* v. ATLANTIC COAST LINE RAILROAD COMPANY. *Respondent.*

1. The Railroad Commissioners have such powers only as are expressly or impliedly conferred upon them by statute.

2. Authority that is indispensable or useful to the valid purposes of a remedial law may be inferred or implied from authority expressly given.

3. Where lawful authority to the Railroad Commissioners is clearly conferred or fairly implied, and it is consistent with the general statutory duties of the Commissioners, a wide discretion is accorded to them in the exercise of such authority.

4. The right of the State to regulate the transportation by common carriers within the State extends to every phase of the service and to every act of the carrier that affects the service.

5. The statutes of this State authorize the Railroad Commissioners to require railroad companies to make written application to the commissioners for their consent to discontinue running any regular train carrying passengers between points wholly within this State.

6. The authority of the Railroad Commissioners is to supervise and regulate the duties of railroads to the public, and not to arbitrarily control and manage the property of railroad companies.

7. While the initial discretion as to the operation of trains is in those charged with the management of the railroad operations, such discretion is subject to lawful governmental regulation.

8. The burden of just and reasonable regulation is under the law and incident to the service undertaken by the common carrier, and such burden is not a denial or deprivation of property rights secured by the State and Federal Constitutions.

.9.   The provision of the Fourteenth Amendment to the Federal
      Constitution that no State shall deny to any person within
      its jurisdiction the equal protection of the laws, does not
      restrain the normal exercise of State authority, but only the
      abuse of such authority.

10.   A wide scope of discretion is accorded to the State in select-
      ing the subjects of regulation and in classifying the persons
      affected by a regulation, the limitations imposed by the equal
      protection of the laws clause of the Federal Constitution being
      only that such classifications shall have some practical rela-
      tion to actual conditions, and shall not be a palpably unjust
      discrimination or merely arbitrary.

11.   The provision of passenger rule 12 requiring written applica-
      tion to be made to the Railroad Commissioners before any
      regular train carrying passengers between points wholly
      within this State is discontinued, imposes a continuing spe-
      cific duty on railroad companies in this State; and being law-
      fully imposed such continuing duty may be enforced by man-
      damus where it has been violated and is disregarded and its
      binding effect is challenged by a railroad company subject to
      the regulation, and it appears that the enforcement of the
      regulation is just and practicable within lawful limitations.

12.   Where an alternative writ of mandamus alleges that the
      respondent has violated the provision of a rule of the Rail-
      road Commissioners, by discontinuing some of its trains with-
      out applying for consent, that the respondent neglects and
      refuses to apply for consent and denies the validity of the
      rule, a present disregard of a specific duty enforceable by
      mandamus is shown, and such allegations are not too general
      or uncertain to form the basis for mandamus.

### STATEMENT.

The alternative writ of mandamus issued by this court
is: "That the Atlantic Coast Line Railroad Company is
a railroad corporation, existing under the laws of the

## VOL. 60, JUNE TERM, 1910. 467

State *ex rel.* R. R. Com'rs. v. A. C. L. R. R. Co.—Statement of Case.

State of Virginia, which on the first day of July 1902 became the owner of divers lines of railway in this State by purchase from the Savannah, Florida & Western Railway Company, which lines, with others since acquired, leased or constructed, it has operated since the said purchase and still operates as a common carrier of persons and property, from points in this State to other points therein.

2. That the Atlantic Coast Line Railroad Company has operated since July 1, 1902 and still operates many regular passenger trains which run wholly within the State from points to other points therein over the lines of railway aforesaid.

3. That on December 3, 1908 the Railroad Commissioners of the State of Florida, after a hearing before them held on November 10, 1908 upon due notice of their intended action as required by law, including notice to the Atlantic Coast Line Railroad Company, prescribed the following rule as Rule 12 of the "Rules Governing the Transportation of Passengers:"

"No railroad company shall discontinue running any regular train carrying passengers, either wholly or in part, without the consent of the Railroad Commissioners, previously obtained.

Written application for such consent must be made at least ten days before the date for the proposed discontinuance, but the Railroad Commissioners may in their discretion shorten the time of application, for good cause shown.

This rule does not apply to a passenger train or trains put on for special occasions, such as fairs, carnivals, conventions, excursions and the like."

That at the hearing aforesaid held on November 10, 1908 all the railroad corporations in the State, including the Atlantic Coast Line Railroad Company, had an opportu-

nity for a just and fair hearing on the adoption of the said proposed Rule 12 before the Commissioners, and some of them, including the Atlantic Coast Line Railroad Company, availed themselves of the opportunity and were heard thereon.

At the time of prescribing the said Rule 12 the said Railroad Commissioners ordered that it should take effect on January 1, 1909, and the said Atlantic Coast Line Railroad Company had due notice of the adoption of the said rule, and of the time at which it should take effect.

4.   That since the said Rule 12 took effect the Atlantic Coast Line Railroad Company has discontinued some of its regular trains carrying passengers and running wholly within this State, without the consent of the Railroad Commissioners previously obtained, and without making any application for such consent, but neglects and refuses to obtain such consent or to make application therefor, and denies the right of the Railroad Commissioners to prescribe the said Rule 12.   That the regular passenger trains which the Atlantic Coast Line Railroad Company has thus discontinued without consent as aforesaid were not passenger trains put on for special occasions, such as fairs, carnivals, conventions, excursions and the like which are excepted from the operation of the rule.

5.   That the Railroad Commissioners of this State and the people of this State are entirely without adequate remedy in the premises unless it be afforded them by the interposition of this Honorable Court through a writ of mandamus.

NOW THEREFORE we being willing that full and speedy justice be done in the premises, do command you, the Atlantic Coast Line Railroad Company, forthwith to observe the provisions and requirements of Rule 12 of the

Rules Governing the Transportation of Passengers prescribed by our Railroad Commissioners as follows:

"No railroad company shall discontinue running any regular train carrying passengers, either wholly or in part, without the consent of the Railroad Commissioners, previously obtained.

Written application for such consent must be made at least ten days before the date for the proposed discontinuance, but the Railroad Commissioners may in their discretion shorten the time of application, for good cause shown.

This rule does not apply to a passenger train or trains put on for special occasions, such as fairs, carnivals, conventions, excursions and the like." •

So far as you are required thereby to make written application to the Railroad Commissioners of the State of Florida for their consent to discontinue running any regular train carrying passengers, either wholly or in part, at least ten days before the date for the proposed discontinuance, unless the said Railroad Commissioners in their discretion shorten the time of application for good cause shown, except in the case of discontinuing a passenger train or trains put on for special occasions, such as fairs, carnivals, conventions, excursions and the like.

Or that you appear before the Justices of our Supreme Court at the Court Room in the City of Tallahassee on the 25th day of October A. D. 1910 at 10 o'clock A. M. of that day and show cause why you refuse so to do; and have you then and there this writ."

A motion to quash the alternative writ was made as follows:

"Comes now the Atlantic Coast Line Railroad Company and moves to quash the alternative writ in said cause upon the following grounds:

### As to the Form of the Writ.

1. Because the matter involved in the alternative writ is a moot question and not of sufficient importance to justify the issuance of a peremptory writ.

2. Because the writ of mandamus does not lie to compel the doing of something that may or may not be done in the future and cannot be used as a preventive writ.

3. Because the alternative writ does not specify any particular violation of Rule 12; in that it does not show that respondent has taken off *any particular train or trains without notice to the Commission,* or that it intends so to do in the future.

4. Because the performance sought to be enforced is not specific, in that there is no particular violation or specification set forth in the alternative writ, and as there is no allegation in the alternative writ that respondent intends to take off any trains, there is no occasion for the issuance of the peremptory writ.

### As to the Power Claimed.

5. Because Rule 12 of the Railroad Commission Rules covering the transportation of passengers set forth in the alternative writ and sought to be thereby enforced, is invalid for the reason that relators are without power to adopt it.

6. Because if there is any lawful power conferred by the existing laws of Florida unto the Railroad Commission with reference to the schedule of intrastate passenger carriers whereby under schedules established the public are not adequately served by convenient schedules for the transfer of passengers and the movement of trains at connecting points, for the statute gives the Railroad Commissioners no power, generally, over the making or abandon-

ing of schedules for intrastate passenger trains in Florida.

7. Because Rule 12 is invalid for the reason that this respondent is entitled to exercise its discretion in operating the property used by it in the discharge of its duty to the public and is wholly without statutory regulations in the operation of its passenger trains in the handling of its intrastate business in Florida, *saving and excepting* wherein the making of schedules, there is a failure to provide adequate connection with other lines for the movement of intrastate passengers and their convenient transfer at junction or connecting points as demanded by public convenience.

8. Because Rule 12 is an unreasonable and unlawful regulation and is in effect the taking of property of relator without due process of law and the denial unto it of the equal protection of the law contrary to the 5th and 14th Amendments of the Constitution of the United States."

*L. C. Massey* for Relators;

*W. E. Kay* for Respondents.

WHITFIELD, C. J., (after stating the facts.)—In effect the alternative writ issued by this court herein recites that Rule 12 of the Rules Governing the transportation of passengers prescribed by the Railroad Commissioners and set out in the alternative writ, requiring written application to the Railroad Commissioners for their consent to discontinue running any regular train carrying passengers to be made at least ten days before the discontinuance, was duly adopted and prescribed and ordered to take effect January 1, 1909, of which respondent had due notice; that since the Rule took effect the respondent has discontinued some of its regular trains carrying passengers and running wholly within the State of Florida,

without the consent of the Railroad Commissioners previously obtained, and without making any application for such consent, but neglects and refuses to obtain such consent or to make application therefor, and that the respondent denies the right of the Railroad Commissioners to prescribe the said Rule 12. The command of the alternative writ is that the respondent do forthwith observe the provisions and requirements of Rule 12 so far as respondent is required thereby to make written application to the Railroad Commissioners for their consent to discontinue running any *regular* train carrying passengers, either wholly or in part, at least ten days before the date for the proposed discontinuance, unless the said Railroad Commissioners in their discretion shorten the time of application for good cause shown, or show cause &c.

The command of the writ is only that the respondent make written application to the Railroad Commissioners for their consent before discontinuing the running of any regular train carrying passengers.

The motion to quash the alternative writ questions the power of the Railroad Commissioners to adopt Rule 12.

The Railroad Commissioners have such powers only as are expressly or impliedly conferred upon them by statute. State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 51 Fla., 578, 41 South. Rep. 705; State *ex rel.* Railroad Com'rs v. Louisville & N. R. Co., 57 Fla., 526, 49 South. Rep. 39.

Authority that is indispensable or useful to the valid purposes of a remedial law may be inferred or implied from authority expressly given. Where lawful authority to the Railroad Commissioners is clearly conferred or fairly implied, and it is consistent with the general statutory duties of the Commissioners, a wide discretion is accorded to them in the exercise of such authority.

The right of the State to regulate the transportation by common carriers within the State extends to every phase

of the service and to every act of the carrier that affects the service. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969.

Under the statute prescribing regulations as "to the transportation of passengers and property" the Railroad Commissioners have "full power and authority to require any railroad company or common carrier to properly oper-ate its railroad or transportation line    *    *    *    , and shall provide and prescribe all such rules and regulations as may be necessary to secure such operation.    *    *    * to do or perform any act or thing necessary to be done to effectually carry out and enforce the provisions and ob-jects of" the Railroad Commission Law, "and to direct and control all other matters pertaining to railroads that shall be for the good of the public." §§2890, 2893, 2896, and 2921 General Statutes of 1906. As these provisions were re-enacted in the General Statutes the sufficiency of the title to the original act is of no consequence here.

Authority to require railroad companies engaged in operating trains carrying passengers between points wholly within this State to make written application to the Railroad Commissioners for their consent to discon-tinue running any regular train carrying passengers, is included within the authority given by the above quota-tions from the statutes, if not also given by other portions of the statutes; and such authority is not only consistent with the purposes of the Railroad Commission Law, but it is apparently a useful if not a necessary authority for the Commissioners to have and exercise in order to make effective and complete their lawful supervision and regu-lation of the duties of railroad companies in the operation of passenger trains in this State. Without information as to a proposed discontinuance of a regular train carrying passengers the Commissioners could not give to the trans-

474     SUPREME COURT OF FLORIDA.

State *ex rel.* R. R. Com'rs. v. A. C. L. R. R. Co.—Opinion of Court.

portation of passengers that supervision and regulation required of them by the statutes. The authority of the Commissioners to supervise the operation and discontinuance of regular trains carrying passengers is not confined or limited to the correction of abuses between connecting carriers. The purpose of the authority given the commissioners is by lawful supervision and regulation to secure adequate service under all conditions within the powers and duties conferred upon the Commissioners, and to perform the legislative duty recognized in the constitution to correct abuses and to prevent unjust discrimination by common carriers. The authority of the Railroad Commissioners is to supervise and regulate the duties of railroads to the public, and not to arbitrarily control and manage the property of railroad companies. State *ex rel.* Railroad Comm'rs v. Florida East Coast Ry. Co., 58 Fla., 524, 50 South. Rep. 425.

The provision of Rule 12 here sought to be enforced is not an attempted exercise of arbitrary control and management of the respondent's railroad in rendering the public service; nor does it unduly interfere with the initial discretion of the railroad officials in the operation of trains. It is merely a regulation in aid of lawful efficient supervision within the authority and duty of the Commissioners; and the provision in question is apparently reasonable. While the initial discretion as to the operation of trains is in those charged with the management of the railroad operations, such discretion is subject to lawful governmental regulation. State *ex rel.* Railroad Comm'rs v. Florida East Coast Ry. Co., 57 Fla., 522, 49 South. Rep. 43.

If the regulation here commanded to be observed were an unreasonable burden that in effect unjustly deprived the respondent of property rights, it would be in conflict

with the provisions of the State Constitution securing private rights as well as with the Fourteenth Amendment to the Federal Constitution; but the Fifth Amendment to the Federal Constitution is not a limitation upon State authority. Talton v. Mayes, 163 U. S. 376, text 382, 16 Sup. Ct. Rep. 986; Spies v. State of Illinois, 123 U. S. 131, 8 Sup. Ct. Rep. 21, 22; Pittman v. State, 51 Fla. 94, 41 South. Rep. 385, 8 L. R. A. (N. S.) 509.

It is apparent, however, that the particular regulation sought to be enforced by this writ is within the authority conferred upon the Commissioners by the Statute, and that its enforcement in a lawful manner will not deprive the respondent of any constitutional right. The burden of just and reasonable regulation is under the law an incident to the service undertaken by the common carrier, and such burden is not a denial or deprivation of property rights secured by the State and Federal Constitutions. State *ex rel.* Railroad Commr's v. Florida East Coast Ry. Co., 57 Fla. 522, 49 South. Rep. 43. No question of interstate transportation is involved here. No unjust or arbitrary classification of those affected by the regulation sought to be enforced is made to appear.

The provision of the Fourteenth Amendment to the Federal Constitution that no State shall deny to any person within its jurisdiction the equal protection of the laws, does not restrain the normal exercise of State authority, but only the abuse of such authority. A wide scope of discretion is accorded to the State in selecting the subjects of regulation and in classifying the persons affected by a regulation, the limitations imposed by the equal protection of the laws clause of the Federal Constitution being only that such classifications shall have some practical relation to actual conditions, and shall not be palpably unjust discrimination or merely arbitrary. See

Louisville & N. R. Co. v. Melton, 218 U. S. 36, 30 Sup. Ct. Rep. 676; Mobile, Jackson & K. C. R. R. Co. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. Rep. 136; affirming Mobile, Jackson & K. C. R. R. Co. v. Hicks, 91 Miss. 273, 46 South. Rep. 360; King Lumber & Mfg. Co. v. Atlantic Coast Line R. R. Co., 58 Fla. 292, 50 South. Rep. 509.

This writ is brought by the Railroad Commissioners to enforce one of their regulations, and not by the Attorney General; and it undertakes to enforce only the portion of Rule 12 of the Railroad Commissioners that requires a written application for consent to discontinue running any regular train carrying passengers between points wholly within this State. The portion of the rule requiring the consent of the Railroad Commissioners to be obtained before a regular train carrying passengers shall be discontinued is not involved in this action.

Rule 12 as set out in the alternative writ approaches dangerously near the sphere of management and control accorded to the railroad officials as distinguished from the supervision and regulation conferred by statutes upon the Railroad Commissioners. In acting under the rule the Commissioners should zealously avoid any action that is not within their authority and that is not reasonable and just under the circumstances as they may actually exist. The application for consent offers an opportunity for a useful discussion between the railroad officials and the Commissioners of the conditions that suggest the discontinuance of a train, tending to prevent arbitrary action and to secure governmental recognition of the discontinuance of a train in which the traveling public have an interest.

The provision of the rule requiring written application to be made to the Railroad Commissioners before any regular train carrying passengers between points wholly

within this State is discontinued, imposes a continuing specific duty on railroad companies in this State; and being lawfully imposed such continuing duty may be enforced by mandamus where it has been violated and is disregarded and its binding effect is challenged by a railroad company subject to the regulation and it appears that the enforcement of the regulation is just and practicable within lawful limitations.

The alternative writ states that the respondent has violated the provision of the rule involved here by discontinuing some of its regular trains carrying passengers without applying for consent, and that the respondent neglects and refuses to make application for consent, and denies the right of the Commissioners to prescribe the rule. This being admitted by the motion to quash, shows a present disregard of a specific duty enforceable by mandamus; and the writ here does not present a moot question or an unimportant delict, especially when the respondent contends that the regulation deprives it of property rights secured by the Federal Constitution.

The number of regular trains required for passenger service in this State may vary with the seasons; and while the discontinuing of a regular train carrying passengers is a matter primarily for the determination of the railroad officials, it is subject to lawful governmental supervision and regulation to prevent abuses and arbitrary action by the carrier that would be detrimental to the public service.

There is no uncertainty or undue generality in the allegations of the alternative writ that the respondent has discontinued some of its regular trains carrying passengers without making application for consent to do so, and neglects and refuses to make application for such consent, and denies the validity of the rule requiring application for consent. The allegation as made is a sufficient basis

for this writ, to enforce not a general course of conduct, but the performance of the continuing specific duty to make application for consent before discontinuing any regular train carrying passengers as occasion may arise. State *ex rel.* Ellis v. Jacksonville & S. W. R. Co., 48 Fla. 114, 37 South Rep. 652; Sec. 2921 General Statutes of 1906.

The motion to quash the alternative writ is overruled with leave to the respondent to take such further and proper action herein as it may be advised by the fourth Tuesday in January, 1911.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.